IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

(1) JEANNE BENNETT, Administrator )
of the Estate of Michael Manos, )
Deceased, )
 )
   Plaintiff, )
 )
v. ) Case No. CIV-17-289-SPS
 )
(1) CHRIS BRYANT SHERIFF OF )
CARTER COUNTY IN HIS OFFICIAL )
CAPACITY )
 )
   Defendant )

_____

**DEFENDANT'S MOTION AND BRIEF IN LIMINE**
_____

Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105-1815
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail: acg@czwlaw.com

ATTORNEY FOR DEFENDANT CHRIS BRYANT SHERIFF OF CARTER COUNTY IN HIS OFFICIAL CAPACITY

July 8, 2019

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i - ii

TABLE OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii - iv

LIST OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

I.    EVIDENCE PLAINTIFF'S COUNSEL *DOES NOT* AGREE TO
      EXCLUDE AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      1.    Milton Anthony's removal from office, criminal plea,
            and behavior toward females . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      2.    Alleged sex with inmate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      3.    Alleged pornographic materials on computers/software
            programs on computers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      4.    Alleged spoliation of evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      5.    Other lawsuits involving the Jail . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      6.    Other inmate deaths in the Carter County Jail . . . . . . . . . . . . . . . . . . . . . 7

      7.    Damages not allowed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      8.    Water lines to Decedent's cell . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      9.    Hypothetical, speculative, and hindsight questions . . . . . . . . . . . . . . . . . 13

      10.   Post-incident review (or lack thereof) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      11.   Questioning the truthfulness or asking a witness14
            for his opinion of another witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      12.   Law enforcement actions, corruption, and prison movies . . . . . . . . . . . . . 14

      13.   OSBI Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14.     VA Records-progress notes about Plaintiff
calling for Manos meds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15.     Wood v. Anthony Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.     EVIDENCE PLAINTIFF'S COUNSEL *DOES* AGREE
TO EXCLUDE AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1.     Insurance coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.     Golden rule agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3.     Witnesses and exhibits not listed on Plaintiff's Supplemental
Witness List and Exhibit List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4.     Dismissed parties or claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5.     Non-existent claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6.     Offer of Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

7.     Jail deaths OTHER THAN those in the Carter County Jail . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITY

**PAGE**

## CASES

*Beck v. Baker*, No. CV-14-67-KG/WPL, 2016 WL 9447762, at *4
(D.N.M. August 9, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013 (10th Cir. 2007) . . . . . . . . . . . . . . 4

*Cache La Poudre Feeds, LLC, v. Land O'Lakes*, 244 F.R.D. 614 (D. Colo. 2007) . . . . . . . . . . 5

*Carter v. Morris*, 164 F.3d 215 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Connick v. Thompson*, 131 S. Ct. 1350, 179 L.Ed.2d 417 (2011) . . . . . . . . . . . . . . . . . . . . . . . 11

*Dubois v. Board of County Commissioners of Mayes County*,
No. 12-CV—677-JED-PJC, 2016 WL 868276, at *2 (N.D. Okla. March 7, 2016) . . . . . . . . . . 5

*Kinan v. City of Brockton*, 876 F.2d 1029 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Lankford v. City of Hobart*, 73 F.3d 283 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mata v. City of Farmington*, 798 F.Supp.2d 1215 (D.N.M. 2011) . . . . . . . . . . . . . . . . . . . . . . . 9

*McGill v. Correctional Healthcare Companies, Inc.*, No. 13-cv-01080-RBJ-BNB,
2014 WL 6513185, at *4 (D. Colo. Nov. 20, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mohler v. Carter County, et al.*, Eastern District of Oklahoma Case No. 18-170-SPS . . . . . . . . 3

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658,
98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Prince v. Carter County, et al.*, Eastern District of Oklahoma Case No. CIV-18-201-RAW . . 10

*Wood v. Anthony, et al.*, Eastern District of Oklahoma Case No. CIV-09-165-JHP . . . . . . . . . 16

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

## RULES

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Evid. 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Evid. 408(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 608(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Evid. 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

Fed. R. Evid. 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 16

LCvR 7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LCvR 7.1(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## LIST OF EXHIBITS TO MOTION IN LIMINE

Exhibit 1        Accusation of Removal

Exhibit 2        Information in CF-2016-366

Exhibit 3        Order

Exhibit 4        Plea in CF-2016-366

Exhibit 5        BOCC Meeting Minutes

Exhibit 6        Letter of resignation

Exhibit 7        Deposition of Chester Carter taken on May 18, 2018

Exhibit 8        *Beck v. Baker*, No. CV-14-67-KG/WPL, 2016 WL 9447762, at *4 (D.N.M. August 9, 2016)

Exhibit 9        Deposition of Michael Armstrong taken on May 14, 2018

Exhibit 10       *Dubois v. Board of County Commissioners of Mayes County*, No. 12-CV—677-JED-PJC, 2016 WL 868276, at *2 (N.D. Okla. March 7, 2016)

Exhibit 11       ME Report re Brown

Exhibit 12       ME Report re Seamster

Exhibit 13       ME Report re Wallace

Exhibit 14       ME Report re Perkins

Exhibit 15       ME Report re Park

Exhibit 16       *McGill v. Correctional Healthcare Companies, Inc.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 6513185, at *4 (D. Colo. Nov. 20, 2014)

Exhibit 17       ME Report re Bowker

Exhibit 18       Supplemental Report

Exhibit 19       Wood v. Anthony, Amended Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) JEANNE BENNETT, Administrator<br>of the Estate of Michael Manos,<br>Deceased, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-289-SPS |
| | ) | |
| (1) CHRIS BRYANT SHERIFF OF<br>CARTER COUNTY IN HIS OFFICIAL<br>CAPACITY | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## DEFENDANT'S MOTION AND BRIEF IN LIMINE

This case is a federal civil rights action arising out of the death of inmate Michael Manos on November 7, 2015.  Manos was incarcerated in the Carter County Jail from October 22, 2015 to November 7, 2015.  Plaintiff claims that an employee(s) of the Carter County Sheriff's Office was deliberately indifferent to Manos's serious medical needs while he was an inmate in the Jail by denying him medical and/or mental health care and that this alleged deliberate indifference caused Manos's death and violated his constitutional rights under the Eight and Fourteenth Amendments. Plaintiff further claims that Defendant Sheriff Bryant is liable for these alleged constitutional violations due to the existence of a custom or practice in the Jail to deny medical and/or mental health care to inmates and/or because Jail staff were not adequately trained or supervised regarding the provision of medical and/or mental health care to inmates.  Defendant Sheriff Bryant in his official capacity denies Plaintiff's allegations in their entirety.

Pursuant to the Court's Amended Scheduling Order entered Doc. 246, Defendant requests that the Court enter an Order in Limine to exclude from evidence at the trial of this case, any argument, evidence, questioning, suggestion, or innuendo related to the below listed topics.  The

undersigned has conferred with Plaintiff's counsel regarding the items listed below, pursuant to LCvR 7.1(f). This Motion in Limine is broken down into categories:  the first are those topics about which Plaintiff's counsel does not agree to exclude at trial and the second is those topics about which Plaintiff's counsel does agree to exclude at trial.

I.     **EVIDENCE PLAINTIFF'S COUNSEL _DOES NOT_ AGREE TO EXCLUDE AT TRIAL.**

1.     **Milton Anthony's removal from office, criminal plea, and behavior toward females.**  Milton Anthony was the Sheriff during Decedent's incarceration at issue in this case. On June 22, 2016, the Oklahoma Multicounty Grand Jury initiated a Removal Action against Anthony.   See Ex. 1, Accusation of Removal.   Also on June 22, 2016, the State filed a criminal case against Anthony charging him with sexual battery and receiving a bribe or in the alternative acceptance of gratuity or reward for appointment or exercise of office.   See Ex. 2, Information in CF-2016-366.

On November 7, 2016, the Accusation for Removal action was dismissed.   See Ex. 3, Order.   Also, on November 7, 2016, Anthony entered an Alford plea to the alternative charge of acceptance of gratuity or reward for appointment or exercise of office and received a two year deferred sentence. See Ex. 4, Plea in CF-2016-366.   On July 1, 2016, the Board of County Commissioners appointed John Ryan as Acting Sheriff.   See Ex. 5, BOCC Meeting Minutes.   On November 7, 2016, Anthony resigned from office.   See Ex. 6, Letter of resignation.

The above referenced Accusation of Removal and criminal case both arose out of Anthony's behavior with two Sheriff's Office female employees, Kelli Denney and Charlene Beene[1]. In depositions in this case, Plaintiff's counsel questioned Anthony extensively about the

---

[1] Plaintiff has listed Kelli Denney and Charlene Beene on her Supplemental Witness List. See

2

Accusation of Removal, the criminal case, his behavior toward Denney and Beene, his resignation, and his Plea agreement.   Plaintiff has also listed numerous documents and news story articles regarding these events as Exhibits 51-56 on her Supplemental Exhibit List filed at Doc. 139. However, everything about these matters should be excluded from evidence in this case. None of these matters have any relevance to whether the Jail had a custom or practice to deny medical and/or mental health care to inmates or whether Jail staff were not adequately trained or supervised regarding the provision of medical and/or mental health care to inmates. On November 7, 2018, the deferred sentence was satisfied and thus Anthony in fact has no conviction arising out of this criminal case. For obvious reasons, these matters would be unfairly prejudicial to the Defendant in this case, they are not relevant to the issue in this case, and they are misleading and confusing to the issues.   Fed. R. Evid. 401-403; 404(b).

Plaintiff should be ordered to make no statement, ask no question, and present no evidence of the Anthony's removal from office, the criminal case against him, or his alleged behavior with Beene and Denney.   <u>See</u> Fed. R. Evid. 401-403.

**2.      Alleged sex with inmate.** The County was sued in 2018 for alleged sexual abuse of Carter County inmate Patricia Mohler by now former Deputy Geary Williamson on June 1, 2016. See Complaint (Doc. 2) at ¶¶ 23-33 in *Mohler v. Carter County, et al.*, Eastern District of Oklahoma Case No. 18-170-SPS.   According to Complaint in *Mohler*, the alleged sexual assault of Mohler was on June 1, 2016 (See ¶¶ 23-33 of her Complaint), which is AFTER the Decedent's incarceration at issue in this case. In fact, Williamson was criminally prosecuted for his alleged actions.

---

Doc. 140.   Their complaints and numerous news stories regarding their claims and the criminal proceedings arising out of their claims are listed as exhibits on Plaintiff's Supplemental Exhibit List.   See Doc. 139.

Allegations of alleged sexually inappropriate behavior by now former Carter County Deputy Sheriff Williamson which occurred AFTER the Decedent's incarceration at issue in this case have no relevance to the issues in this case and should be excluded because they are unfairly prejudicial to the Defendants, they are not relevant to the issue in this case, and they are confusing to the jury: they should be excluded under Fed. R. Evid. 401-403.   Plaintiff should be ordered to make no statement, ask no question, and present no evidence of this issue. See Fed. R. Evid. 401-403.

3.     **Alleged pornographic materials on computers/software programs on computers.** During depositions in this case, Plaintiff's counsel asked Chester Carter (and others) about pornographic material allegedly being found on a computer in the Jail.   See Ex. 7, Depo. of C. Carter at p. 105, ln. 6-p. 107, ln. 5. At his deposition, Carter (and others) denied he was responsible for pornographic sites being accessed on the Jail's computer. See Ex. 7, Depo. of C. Carter at p. 106, ln. 9-16.

Allegedly viewing pornographic material on the Jail's computer, more than two years before the Decedent's incarceration at issue in this case, has nothing to do with the issue in this case. The only purpose that is served in asking this question in front of the jury is to unfairly prejudice the Sheriff's Office in the minds of the jurors and thus should be prohibited. Plaintiff should be ordered to make no statement, ask no question, and present no evidence of this issue. See Fed. R. Evid. 401-403.

4.     **Alleged spoliation of evidence.**   There is no Jail video in this case.   A party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent. *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir. 2007).   A party

4

usually knows or should know that litigation is imminent when it receives an evidence preservation letter, a Notice of Tort Claim, or a lawsuit.  *See Cache La Poudre Feeds, LLC, v. Land O'Lakes*, 244 F.R.D. 614, 621 (D. Colo. 2007); *Beck v. Baker*, No. CV-14-67-KG/WPL, 2016 WL 9447762, at *4 (D.N.M. August 9, 2016) (unpublished opinion attached as Ex. 8). Here, no evidence preservation letter or other notice of potential litigation was submitted to the Defendant until the lawsuit was filed on July 25, 2017 (Doc. 2). Mike Armstrong, the Jail Administrator during Decedent's incarceration, explained at his deposition that Jail video is preserved for about 30 days, and that's it.  Ex. 9, Depo. of M. Armstrong at p. 34, ln. 4-14. The Jail's video surveillance equipment simply loops and records over itself approximately every 30 days, in the normal course of business.  Notably, there was no video camera inside Cell A104 where Decedent was housed from October 27-November 7, 2015; thus, there could be no video to preserve from inside cell A104.   *See Dubois v. Board of County Commissioners of Mayes County*, No. 12-CV—677-JED-PJC, 2016 WL 868276, at *2 (N.D. Okla. March 7, 2016) (unpublished opinion attached as Ex. 10) (holding that defendant did not have a duty to preserve video of outside of cell because the probative value of such video would be minimal at best).

In numerous depositions, Plaintiff's counsel has asked questions or made editorial remarks regarding the absence of Jail video in this case, suggesting that the Jail should have preserved Jail video and the fact that it didn't do so means that the Jail has something to hide. However, there is nothing improper about the absence of Jail video or about the fact the Jail did not preserve Jail video, where there is no video from inside cell A104 that could have been preserved and where there was no evidence preservation letter or other notice of potential litigation presented to the Jail until this suit was filed more than a year after Decedent's death, which was long after the Jail's

video system had recorded over itself. Plaintiff should be ordered to not make argument, present evidence, or ask questions in such a way so as to suggest that the Jail should have preserved Jail video and/or the fact that it didn't do so is wrong, improper, or illegal or constitutes a cover up. The alleged failure to preserve Jail video is not relevant, and is misleading, confusing, and unfairly prejudicial to the Defendant.   See Fed. R. Evid. 401-403.

Plaintiff should also be ordered not to ask questions or present evidence about other instances in the Jail where the Jail did preserve Jail video. Again, this is not relevant, and is misleading, confusing, and unfairly prejudicial to the Defendant.   See Fed. R. Evid. 401-403.

**5.       Other lawsuits involving the Jail.**   Defendant requests the Court to exclude testimony or evidence of any other lawsuits involving or against Carter County, the Carter County Jail, the Carter County Sheriff's Office, or any of the County, Jail, or Sheriff's Office employees as well as other deaths in the Carter County Jail.   Over the years, of course, there have been several suits against the County arising out of issues in the Jail and/or the Sheriff's Office. These suits were related to employment matters[2], conditions of confinement, etc.   However, the existence of lawsuits and/or the results of them are not relevant to the issue in this case. Notably, there has never been a finding of fault, decree, order, judgment, etc., that the Jail had an unconstitutional policy, practice or custom regarding the provision of medical care to inmates OR that an inmate's federal, constitutional rights had been violated by a Jail employee or Jail policy, practice or custom.

Other lawsuits arising out of the Jail or the Sheriff's Office are not relevant and are confusing, misleading, and unfairly prejudicial.   See Fed. R. Evid. 401-403.   *See Kinan v. City of*

---

[2] Plaintiff has listed Johnny Denney, Kelli Denney, and Charlene Beene as witnesses on her Supplemental Witness List filed at Doc. 140; all are current or former Sheriff's Office employees who filed lawsuits against the County regarding their employment.

6

*Brockton*, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (trial court's exclusion of two other civil rights lawsuits against defendant police officer was not abuse of discretion). Plaintiff should be ordered to make no statement, ask no question, and present no evidence of other lawsuits arising out of the Sheriff's Office or the Jail.   See   Fed. R. Evid. 401-403.

6.      **Other inmate deaths in the Carter County Jail.**   Other than Decedent's, there have been a few inmate deaths between 2007 and June 2016; all but Decedent's should be excluded, though.

On April 21, 2007, Terry Brown was found dead in a Carter County Jail cell: his cause of death was severe fatty metamorphosis (liver caused by severe alcoholism). See Ex. 11, ME Report re Brown.   Harvey Burkhart was the Carter County Sheriff at that time.   Brown's death occurred 8 years before Decedent's in this case. Brown died in the Jail; Decedent did not. Brown's death occurred when Harvey Burkhart, not Milton Anthony, was Sheriff; thus, Burkhart was a different policy maker than Anthony.   Brown's death was not in any way caused by denial of mental health care treatment, as is alleged to be the case with Decedent in this case.   There was no lawsuit filed regarding Brown's incarceration or death, and there was no finding or decree of fault, liability, unconstitutional policies, practices or customs arising out of it.   Evidence of Brown's death should be excluded; it is unfairly prejudicial, not relevant, confusing, and misleading, where it occurred more than 8 years before Decedent's death, where it occurred under a different Sheriff/Policy maker than Decedent's did, where it occurred in the Jail and Decedent's did not, where there is no question that denial of mental health care treatment was NOT an issue in it, as it is in the case of Decedent, where there was no lawsuit filed regarding it, and there was no finding or decree of fault, liability, unconstitutional policies, practices or customs arising out of it which

7

should have put the Sheriff in his official capacity on notice that a federal constitutional violation occurred and he should take action to prevent it from continuing to happen.   Brown's death should be excluded under Fed. R. Evid. 401-403.

On February 1, 2011, Jason Seamster was found dead in the Carter County Jail: his cause of death was excited delirium/meth intoxication.   <u>See</u> Ex. 12, ME Report re Seamster.   On April 12, 2011, Patricia Wallace found dead in the Carter County Jail: her cause of death was acute intoxication of ethanol and morphine. <u>See</u> Ex. 13, ME Report re Wallace.   On October 14, 2013, Jackie Perkins was found dead in the Carter County Jail: his cause of death was infective endocarditis (infection of the heart valve/endocardium).   <u>See</u> Ex. 14, ME Report re Perkins.   Ken Grace was the Carter County Sheriff at the time of these three deaths.   These three deaths occurred between 2 and 4 years before Decedent's in this case.   These three individuals died in the Jail; Decedent did not.   These three deaths occurred when Ken Grace, not Milton Anthony, was Sheriff; thus, Grace was a different policy maker than Anthony.   These three deaths were not in any way caused by denial of mental health care treatment, as is alleged to be the case with Decedent in this case.   There was no lawsuit filed regarding any of them and there was no finding or decree of fault, liability, unconstitutional policies, practices or customs arising out of any one of these three individual's incarcerations or deaths.   Evidence of these three deaths should be excluded; they are unfairly prejudicial, not relevant, confusing, and misleading, where they occurred between two and four years before Decedent's death, where they occurred under a different Sheriff/Policy maker than Decedent's did, where they occurred in the Jail and Decedent's did not, where there is no question that denial of mental health care treatment was NOT an issue in any of them, as it is in the case of Decedent, where there was no lawsuit filed regarding any of

8

them, and where there was no finding or decree of fault, liability, unconstitutional policies, practices or customs arising out of any of them which should have put the Sheriff in his official capacity on notice that a federal constitutional violation occurred and he should take action to prevent it from continuing to happen.   These three prior deaths should be excluded under Fed. R. Evid. 401-403.

On August 19, 2015, Everett Park was found hanging in the Carter County Jail and later died at Mercy Hospital in Ardmore, OK. His cause of death was ligature asphyxia by hanging. See Ex. 15, ME Report re Park.   Milton Anthony was the Sheriff at that time.   This death was not in any way caused by denial of mental health care treatment, as is alleged to be the case with Decedent in this case.   There was no lawsuit filed regarding it and there was no finding or decree of fault, liability, unconstitutional policies, practices or customs arising out of it.   Evidence of this death should be excluded; it is unfairly prejudicial, not relevant, confusing, and misleading. Fed. R. Evid. 401-403.

These deaths which occurred prior to Decedent's at issue in this case should all be excluded: they are not relevant and they are unfairly prejudicial, confusing, and misleading.   To be admissible, the previous complaints must bear a factual resemblance to the circumstances involved in the present case. *McGill v. Correctional Healthcare Companies, Inc.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 6513185, at *4 (D. Colo. Nov. 20, 2014) (unpublished opinion attached as Ex. 16); *Mata v. City of Farmington*, 798 F.Supp.2d 1215, 1235-36 (D.N.M. 2011) (evidence of specific prior, unrelated incidents of officers' use of force, internal-affairs complaints, and civil rights suits not admissible as irrelevant and unfairly prejudicial).

Further, they do not tend to show an unconstitutional custom, policy or practice existed in

the Jail with respect to the Decedent in this case.   In order for a municipality to be held liable for

an un-official practice under § 1983, the practice must be "so permanent and well settled as to

constitute a custom or usage with the force of law...In order to establish a custom, the actions must

be persistent and widespread ... practices of [city] officials."   *Lankford v. City of Hobart*, 73 F.3d

283, 286 (10th Cir. 1996) (internal citations and quotation marks omitted). In determining what

level of persistent and widespread conduct will be sufficient to establish municipal liability, it is

clear that "normally random acts" and "isolated incidents" fall short. *Church v. City of Huntsville*,

30 F.3d 1332, 1345 (11th Cir. 1994).   *See also Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999)

(a "meager history of isolated incidents" is insufficient).   Furthermore, the court in *Lytle v. Doyle*,

326 F.3d 463, 473 (4th Cir. 2003), required evidence of "'numerous particular instances' of

unconstitutional conduct."   Here, these deaths over the course of several years preceding

Decedent's death are not persistent, widespread; rather, they are nothing more than a "meager

history of isolated incidents."

Finally, on June 30, 2016, Wayne Bowker died at Mercy Hospital in Ardmore, OK[3]. His

cause of death was cardiomegaly (enlarged heart). See Ex. 17, ME Report re Bowker.   Milton

Anthony was the Sheriff at the time of Bowker's deaths (as well as Decedent's in this case).

Bowker was incarcerated in the Carter County Jail from March 22, 2016 to June 30, 2016 (See

Doc. 2 in *Prince*).   Bowker and the Decedent in this case were NOT incarcerated in the Carter

County Jail at the same time as each other.   Logically, Plaintiff cannot show that Decedent's

rights were violated in this case with evidence that Bowker's (or anyone else's for that matter)

rights were allegedly violated during many months after Decedent's death.

---

[3] Bowker's death is the subject of the presently pending, federal lawsuit styled *Prince v. Carter County, et al.*, Eastern District of Oklahoma Case No. CIV-18-201-RAW; Plaintiff's counsel in *Prince* is the same Plaintiff's counsel in *Bennett*.

10

To make a claim for municipal liability under 42 U.S.C. § 1983 against Defendant Bryant in his official capacity, Plaintiff must prove: (1) that Decedent's constitutional rights were violated by a municipal employee and (2) that a municipal policy, practice, or custom was the moving force behind the constitutional deprivation.   *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).   In other words, Plaintiff must establish that a policy or custom of the Defendant Bryant in his official capacity existed ***during Decedent's incarceration*** that and that it caused ***Decedent's*** alleged constitutional violations. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821-22 (1985) (emphasis added).   It is not relevant that such policy or custom existed during Decedent's incarceration and that it later, after Decedent's death, caused someone else's alleged constitutional violations.

Alternatively, Plaintiff may attempt to establish municipal liability against Defendant Bryant in his official capacity by showing a pattern of constitutional violations occurred prior to the one at issue, which were sufficient to put Defendant Bryant in his official capacity on notice of such violations so that he could take action to prevent them from continuing to happen. *See Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (holding that a pattern of similar constitutional violations is typically necessary to prove deliberate indifference).   Yet here again, Plaintiff cannot present evidence of Bowker's incarceration and death in an effort to show that Decedent's death was caused by a policy, practice or custom in the Jail.   This piling on of deaths and alleged constitutional violations only serves to unfairly prejudice the Defendant; it is completely irrelevant (and it is misleading and confusing) in ***this*** case whether the Jail's policies, practices, or customs which allegedly caused Decedent's death in this case, also caused Bowker's death many months later. What is relevant in this case is whether the Jail's policies, practices, or

11

customs in place at the time of Decedent's death caused Decedent's death in this case.

Inmate deaths in the Carter County Jail other than Decedent's in this case are not relevant and are confusing, misleading, and unfairly prejudicial. Plaintiff should be ordered to make no statement, ask no question, and present no evidence regarding inmate deaths in the Carter County Jail, other than Decedent's.   See   Fed. R. Evid. 401-403.

7.   **Damages not allowed.** Here, Plaintiff may only recover compensatory damages for Decedent's pain and suffering.   Punitive damages are not recoverable in this case.   Plaintiff may not recover for her own alleged sorrow, loss of relationship, companionship, etc., or emotional or financial support she received from Decedent. Thus, Plaintiff and her counsel should be ordered to not make any argument, request, suggestion, innuendo, etc., that the jury should "send a message," "make a statement," "deliver a verdict of historical significance," seek "biblical" justice, to disregard the instructions, to render a verdict that would act as a "deterrence" to future conduct, to render a "legacy" verdict, to render a verdict that represents a "vindication of justice," or similar such comments, please, or requests. The undersigned is aware that in the *Williams v. Tulsa County, et al.*, case, an inmate jail death case which Plaintiff's counsel in this case frequently refers the undersigned to and which Plaintiff's counsel in this case was counsel for Plaintiff Williams, these pleas were made on behalf of Plaintiff Williams in closing argument. This is why the undersigned is raising this issue now in this Motion in Limine.   These types of argument and remarks are unfairly prejudicial, confusing, misleading, and not relevant.   See Fed. R. Evid. 401-403.

Plaintiff should also be ordered not to present evidence or argument of her own sorrow, loss of relationship, companionship, or emotional or financial support she received from Decedent.

12

Such things are unfairly prejudicial, confusing, misleading, and not relevant.   See Fed. R. Evid. 401-403.

**8.      Water lines to Decedent's cell.**   There is a supplemental report in the ME's file that makes reference to a conversation between an ME's office employee and an OSBI Agent (See Ex. 18).   This supplemental report is inadmissible hearsay and it contains inadmissible hearsay and hearsay within hearsay.   See Fed. R. Evid. 801-802, 805.   More particularly, there is a written statement in here, "jail may have turned water off to prevent flooding."   Apparently in reliance on this, Plaintiff's counsel have asked questions or made assertions during depositions that water to the cell was in fact turned off, but there is no evidence that it in fact was.   So, Plaintiff should be ordered to make no argument, statement, insinuation, ask a question, etc., which tends to suggest that the Jail turned the water off in the Decedent's cell. This is hearsay, hearsay within hearsay, confusing, and unfairly prejudicial.   See Fed. R. Evid. 401-403, 801-802, 805.

**9.      Hypothetical, speculative, and hindsight questions.**   In numerous depositions, Plaintiff's counsel has asked witnesses if "knowing what you know now, would you have still done things this way," or "if you knew XYZ, would you still take action ABC," or similar type hypothetical, hindsight, or speculative questions.   Such questions are tantamount to instructing the jury on the law in this case and this is the Court's province, no one else's.   Such questions are improper and should be prohibited.   Plaintiff's counsel should be ordered NOT to pose such questions of witnesses and parties at trial. Such questions are improper, unfairly prejudicial, misleading, confusing, and not relevant.   See Fed. R. Evid. 401-403.

**10.     Post-incident review (or lack thereof).**   During depositions in this case, Plaintiff's counsel has questioned witnesses whether the Jail conducted an internal investigation

13

about Decedent's death, following his death. He has also asked what steps, if any, the Jail has taken since Decedent's death to prevent it from happening again. Nothing that happened after the Decedent's incarceration ended is relevant to the issue in this case, which is whether a Jail policy, custom or procedure of deliberate indifference to serious medical needs which caused Decedent's death.   These things that happened in the Jail AFTER Decedent's incarceration are confusing, misleading, and unfairly prejudicial to the Defendant.   Plaintiff should be ordered to make no statement, ask no question, and present no evidence of things that occurred in the Jail after Decedent's death, particularly whether any post-incident review occurred.   <u>See</u> Fed. R. Evid. 401-403. These things are unfairly prejudicial, misleading, confusing, and not relevant.   See Fed. R. Evid. 401-403.

**11.     Questioning the truthfulness or asking a witness for his opinion of another witness.**   Plaintiff's counsel should be prohibited from asking a witness if another witness is a truthful person, and Plaintiff's counsel should be prohibited from asking a witness his/her opinion of another witness.   The purpose of such questioning clearly touches upon character type testimony, which is prohibited.   Such questioning is improper, unfairly prejudicial, confusing, and misleading.   <u>See</u> Fed. R. Evid. 401-404; 608.

**12.     Law enforcement actions, corruption, and prison movies.**     There have been stories in the news locally and around the country about corruption in law enforcement/corrections, law enforcement abuse, wrongful shootings, wrongful arrests, abuse of inmates, abuse of detainees, etc. Additionally, "Shawshank Redemption" and "The Last Castle" are two well known, popular movies which are about corruption in prisons and abuse of inmates in prisons.   Plaintiff should be ordered to make no statement, ask no question, make no comparisons

14

or reference to, and present no evidence of these various topics; he should be ordered to make no comparison, reference or analogy to these topics.   Such would be improper, confusing, misleading, not relevant, and unfairly prejudicial.   See Fed. R. Evid. 401-403.

      **13.**    **OSBI Reports[4].**  Plaintiff has identified the OSBI Prosecution Report as Exhibit 12 and the OSBI Report re Wayne Bowker as Exhibit 19 on her Supplemental Exhibit List filed at Doc. 139.   These OSBI Reports were prepared by OSBI Agents and purport to summarize interviews the Agents conducted of numerous people, including Jail staff and inmates in the Carter County Jail. They also contains numerous attachments to the Reports which were generated by the Jail, Mercy Hospital, SOAS ambulance, the ME's office, etc.   These Reports are hearsay and they contains hearsay and hearsay within hearsay.   As such, they are not admissible under Fed. R. Evid. 801-802; 805. Further, they contain information that is unfairly prejudicial, confusing, misleading, and not relevant.   Thus, Plaintiff should be ordered to make no statement, ask no question, and present no evidence regarding these OSBI Reports. See Fed. R. Evid. 401-403; 801-802; 805.

      **14.**    **VA Records-progress notes about Plaintiff calling for Manos meds [5].** Plaintiff has identified VA Records-progress notes about Plaintiff calling for Manos meds as Exhibit 14 on her Supplemental Exhibit List filed at Doc. 139.   These progress notes were prepared by Decedent's medical care provider and purport to summarize conversations between the Plaintiff and Jail staff and between the Plaintiff and Decedent's medical care provider. These Progress Notes are hearsay and they contains hearsay and hearsay within hearsay.   As such, they

---

[4] The undersigned did not discuss this issue with Plaintiff's counsel pursuant to LCvR 7.1 because she only realized late in the day on July 8, 2019, the date this Motion in Limine was due, that she needed to include this topic in Defendant's Motion in Limine. The undersigned therefore presumes Plaintiff's counsel opposes this portion of Defendant's Motion in Limine.

[5] Id. at FN 3.

are not admissible under Fed. R. Evid. 801-802; 805. Thus, Plaintiff should be ordered to make no statement, ask no question, and present no evidence regarding these Progress Notes. See Fed. R. Evid. 801-802; 805.

**15.     Wood v. Anthony Complaint**[6]**.** Plaintiff has identified this as Exhibit 50 on her Supplemental Exhibit List filed at Doc. 139.   It is a lawsuit filed in federal court on July 8, 2009 by an inmate who complained about various alleged conditions of his incarceration in the Carter County Jail since June 2, 2008.   See exhibit 19, attached.   It was dismissed on January 11, 2010. See Doc. 55 filed in *Wood v. Anthony, et al.*, Eastern District of Oklahoma Case No. CIV-09-165-JHP.   This Complaint is hearsay, it contains hearsay and hearsay within hearsay and it contains information that is unfairly prejudicial, irrelevant, confusing, and misleading.   Thus, Plaintiff should be ordered to make no statement, ask no question, and present no evidence regarding this Complaint or the information/allegations underlying this Complaint. See Fed. R. Evid. 401-403; 801-802; 805.

## II.     EVIDENCE PLAINTIFF'S COUNSEL *DOES* AGREE TO EXCLUDE AT TRIAL.

Plaintiff's counsel has agreed that he does not intend to present evidence or argument or ask questions about the below listed topics at trial. Such agreement implicitly requires that he will instruct Plaintiff and her witnesses to likewise not mention the below when they testify.

**1.     Insurance coverage:** Plaintiff agrees to not present evidence of this.

**2.     Golden rule argument:**     Plaintiff agrees to not make this type of argument.

**3.     Witnesses and exhibits not listed on Plaintiff's Supplemental Witness and Exhibit Lists:** Plaintiff agrees to not call witnesses or present exhibits at trial which were not listed on her

---

[6] Id. at FN 3.

Supplemental Witness and Exhibit Lists filed at Doc. 139-140, unless for impeachment or rebuttal.

4.     **Dismissed parties or claims.** Plaintiff agrees to not present evidence or argument that certain parties and/or claims in this case have been dismissed.

5.     **Non-existent claims.**   Plaintiff agrees to not present evidence or argument regarding instances of the use of force or of search or seizures in the Jail or by the Sheriff's Office, or of the Sheriff's Office or the Jail's policies, practices, or customs regarding same.

6.     **Offer of Judgment.**   Defendant timely made an Offer of Judgment in this case for a substantial amount; Plaintiff rejected it. Under Fed. R. Evid. 408(a) and 608(b), Defendant's offer is not admissible.   Plaintiff agrees to not present evidence or argument regarding it.

7.     **Jail deaths OTHER THAN those in the Carter County Jail**.   Plaintiff agrees to not present evidence or argument regarding jail deaths anywhere OTHER THAN those in the Carter County Jail.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant requests that the Court enter an Order in Limine to exclude from evidence at the trial of this case, any argument, evidence, questioning, suggestion, or innuendo related to the above-listed topics.

Respectfully submitted,

s/ Ambre C. Gooch                              
Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105-1815
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail: acg@czwlaw.com

17

ATTORNEY FOR DEFENDANT CHRIS BRYANT SHERIFF OF CARTER COUNTY IN HIS OFFICIAL CAPACITY

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Daniel E. Smolen, via electronic mail at: danielsmolen@ssrok.com
Robert M. Blakemore, via electronic mail at: bobblakemore@ssrok.com
Bryon D. Helm, via electronic mail at: byronhelm@ssrok.com
SMOLEN, SMOLEN & ROYTMAN, PLLC
701 South Cincinnati Avenue
Tulsa, OK 74119
***Attorneys for Plaintiff***

s/ Ambre C. Gooch
Ambre C. Gooch

18