## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

JEANNE BENNETT, Administrator )
of the Estate of Michael Manos, )
Deceased, )
                                                    )
      Plaintiff, )   Case No.: 17-CV-289-SPS
                                                    )
vs. )
                                                    )
CHRIS BRYANT, Sheriff of Carter County, )
Oklahoma, in his Official Capacity, )
                                                    )
      Defendant. )

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION *IN LIMINE*

**COMES NOW** the Plaintiff, Jeanne Bennett ("Plaintiff"), as Administrator of the Estate of Michael Manos ("Mr. Manos" or "Decedent"), and respectfully submits her Response in Opposition to Defendant's Motion *in Limine* (Dkt. #249), as follows:

Defendant's Motions *in Limine* (Dkt. #249) should be denied as stated herein.

## STANDARD OF REVIEW

A motion in *limine* is a procedural device intended to isolate prejudice from the jury. 20 AM. JUR. Trials 441. The motion in *limine* provides the "court with the opportunity to rule in advance of the trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial". *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1218 (D.Kan. 2007). Still, although "such rulings can work a savings in time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of the evidence." *Townsend v. Benya*, 287 F.Supp.2d 868, 872 (N.D.Ill. 2003); *Wilkins*, 487 F.Supp.2d at 1218. Therefore, "a court should reserve its ruling for those instances when the evidence plainly is inadmissible on all potential grounds." *Id.* Some courts suggest broad rulings on relevance and unfair prejudice are disfavored, and the preferred practice is to rule on evidentiary matters at trial in a developed factual context. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Additionally, "district courts are not required to make definite pretrial rulings on motions in *limine* seeking to exclude . . . evidence . . . [and] may change its ruling at any time for whatever reason it deems appropriate.*" United States v. Martinez,* 76 F.3d 1145, 1151-1152

1

(10th Cir. 1996).

Further, "the movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. The court may also deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Smith v. Board of County Com'rs of County of Lyon*, 2003 WL 21293565, *1 (D.Kan. 2003) (citations omitted). *See also Walsh v. United States,* No. 07-CV-568-PJC, 2009 WL 3755553, at *2 (N.D. Okla. Mar. 31, 2009) ("A court is within its discretion to deny a motion in limine that fails to identify the evidence with particularity or to present arguments with specificity. Motions in limine which exclude broad categories of evidence should rarely be granted. The better practice is to address the issues of admissibility as they arise."). "All relevant evidence is admissible." Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A Court should never enter an order in advance of trial that would preclude the admission of evidence that may for any purposes, make a fact of consequence more or less probable, even if that evidence is not conclusive. *See e.g., Contemporary Mission, Inc, v. Famous Music Corp.*, 557 F.2d 912, 928 (2nd Cir. 1977).

## ARGUMENTS AND AUTHORITIES

### 1. Evidence Concerning Milton Anthony's Removal From Office, Criminal Plea and Behavior Toward Females is Relevant and Admissible

Milton Anthony ("Former Sheriff Anthony" or "Anthony") served as Carter County Sheriff from 2013 until he resigned on November 7, 2016. *See* Anthony Depo. (Dkt. #207-1) at 14:4-7; 18:18-25.  Anthony resigned after pleading guilty to a charge of "accepting a gratuity or reward for appointment of official duty". *Id.* at 245:3-17.

The charges stemmed from Anthony's sexual relationship with a deputy, Kelli Denney. *See* Anthony Depo. (Dkt. #207-1) at 200:13-18. In July of 2015, Ms. Denney confided in Anthony, whom she had known since she was a child and called "Uncle Milty," that she was in significant economic hardship. Anthony immediately exploited this vulnerability. He sent a text message to Ms. Denney that said, "you help me, I help you," and suggested that he would hire Ms. Denny's husband, Johnny Denney, as a Carter County Deputy Sheriff if she had sexual relations with him. *See Denney v. Carter County Board of County Commissioners et al.,* 18-CV-42-RAW (E.D. OK 2018); Dkt. ##249-1, and 249-2. Then- Sheriff Anthony had sex with Ms. Denney approximately 50 times,

over the course of a year, usually at his home around noon on Fridays. *See* Anthony Depo. (Dkt. #207-1) at 232:16 – 233:7. Ms. Denney attempted to end her sexual relationship with Anthony several times, but he "used various tactics to cause [Ms. Denney] to continue the sexual relationship, using both carrot and stick approaches." Anthony threatened to terminate Ms. Denney and/or her husband if she refused to give him sexual favors. On May 20, 2016, Anthony told Ms. Denney, "…I said you scratch my back and I scratch yours, that's what I said…when you stop scratching, then I stop scratching. You see what I'm saying." When Ms. Denney held firm in ending the relationship, Anthony reassigned her to a less desirable position within the Jail. Fearing for her and her husband's jobs, Ms. Denney reported Anthony's behavior to the media and law enforcement. In an act of bitter retribution, Anthony placed Ms. Denney on administrative leave until approximately September 9, 2016. *See Denney v. Carter County Board of County Commissioners et al.,* 18-CV-42-RAW (E.D. OK 2018).

In his Motion *in Limine*, Defendant argues that "everything about these matters should be excluded from evidence in this case" and that "[n]one of these matters have any relevance to whether the Jail had a custom or practice to deny medical and/or mental health care to inmates or whether Jail staff were not adequately trained or supervised regarding the provision of medical and/or mental health care to inmates." Dkt. #249 at 3.  This argument lacks merit.  Evidence of Anthony's admitted misconduct is relevant and admissible.

As this Court is aware, Plaintiff's claims are brought against Sheriff Bryant in his official capacity. A claim against a state actor in his official capacity, such as Sheriff Bryant, "is essentially another way of pleading an action against the county or municipality" he represents and is considered under the standard applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes,* 624 F.3d 1322, 1328 (10th Cir. 2010). *See also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). In *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1977) and subsequent cases, the Supreme Court has consistently "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 403 (1997).

A municipal policy or custom may take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage

3

>with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure ***results from deliberate indifference to the injuries that may be caused.***

*Bryson v. City of Oklahoma City,* 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added).

Plaintiff will introduce evidence of Former Sheriff Anthony's misconduct as relevant to his utter failure to supervise the Jail, including the health care delivery system, and as pertinent to the allegation of "deliberate indifference" at the institutional level.

The evidence will establish that during his time as Sheriff, Anthony delegated day-to-day oversight of the Carter County Detention Center (hereinafter, "Jail") to his Jail Administrator, Michael Armstrong. *See* Anthony Depo. (Dkt. #207-1) at 17:17-24; 60:19 – 61:21; 74:22 – 75:22; 82:19 – 83:5. Even though Former Sheriff Anthony had ultimate responsibility for the Jail, he did nothing to monitor the Jail Administrator's job performance or to otherwise ensure that detention staff were being properly trained and supervised. *Id.* Former Sheriff Anthony was hands-off, uninterested, and miserably failed in his duty to assure that the Jail's policies, practices and programs complied with the United States Constitution.

In *Tafoya v. Salazar,* 516 F.3d 912, 919 (10th Cir. 2008), the Tenth Circuit found evidence of a county sheriff's deliberate indifference based, in part, on an "undisciplined culture of 'anything-goes' among the detention officers [which] remained unaddressed and unmitigated by Sheriff Salazar, who continued to employ a ***hands-off approach*** to jail management." (emphasis added). It would be overly generous to call Former Sheriff Anthony's approach to jail management "hands-off". Sheriff Anthony did not manage or supervise the Jail at all, and exhibited utter indifference to the medical needs of the inmates. Here, there is evidence that Anthony had actual knowledge of ongoing and alarming problems with the Jail's medical system (to the extent there was one), including: **(A)** a recurring issue with inmates not receiving prescription medication; **(B)** a continuing problem with Jail staff failing to notify Nurse Miller of the reasons inmates were sent to A-Block (the purported medical wing); **(C)** ongoing violation of the policy requiring the Jail provide medical care under the guidance of a licensed physician; **(D)** Nurse Miller's unresponsiveness to inmate medical problems: **(E)** detention staff being provided with the answers to the Jail Standards and CPR exams in order to cheat the test results.

4

Evidence of Anthony's official misconduct which led to his resignation -- including evidence of his corruption and pattern of admitted sexual misconduct with at least one employee -- is plainly relevant in establishing the Sheriff's "hands-off approach to jail management" and deliberate indifference to the rights of inmates at the Jail, including Mr. Manos. And this evidence should not be excluded under Rule 403 as Defendant has failed to establish that its probative value is "substantially outweighed by the danger of … unfair prejudice, confusing the issues [or]misleading the jury…." Fed. R. Evid. 403.[1]

Such material may also be appropriate for cross examination of Anthony under Rule 608(b) of the Federal Rules of Evidence. Defendant's Motion *in Limine* with respect to Issue # 1 should be denied.

### 2. Former Deputy Williamson's Sex With an Inmate May be Relevant and Should Not be Precluded

As noted by Defendant, former Carter County Deputy Geary Williamson was criminally prosecuted for having sex with an inmate at the Jail. *See* Dkt. #249 at 3-4. The incident occurred in June of 2016. *Id.* Defendant argues that "[a]llegations of alleged sexually inappropriate behavior by now former Carter County Deputy Sheriff Williamson which occurred AFTER the Decedent's incarceration at issue in this case have no relevance to the issues in this case and should be excluded because they are unfairly prejudicial to the Defendants, they are not relevant to the issue in this case, and they are confusing to the jury: they should be excluded under Fed. R. Evid. 401-403." *Id.* This argument should be rejected.

The mere fact that the sexual misconduct occurred after Mr. Manos' incarceration does not render evidence of that misconduct irrelevant. On the contrary, post-event evidence may well be relevant in establishing the existence and continuation of the unconstitutional policy or custom. *See, e.g., Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985), *cert. denied,* 480 U.S. 916 (1987) ("The disposition of the policymaker may be inferred from his conduct ***after*** the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no

---

[1]  When considering a Rule 403 challenge, the court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Mendelsohn v. Sprint/United Management Co.*, 466 F.3d 1223, 1231 (10th Cir. 2006), *vacated on other grounds*, 552 U.S. 379 (2008). Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly. *See, e.g., World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1139 (10th Cir. 2006); *United States v. Perryman*, 2012 WL 1536745, *2 (N.D. Okla. May 1, 2012).

discharges, and no admissions of error. The officers testified at the trial that ***no changes had been made in their policies.*** If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.") (emphasis added); *Bordanaro v. McLeod*, 871 F.2d 1151, 1167 (1st Cir.1989) ("Postevent evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right."); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir.1997) ("[W]e reiterate our rule that ***post-event evidence is not only admissible*** for purposes of proving the existence of a municipal defendant's policy or custom, ***but is highly probative*** with respect to that inquiry.")(emphasis added); *Harrigan ex rel. Harrigan v. Marion Cnty.*, 2013 WL 5274407, \*7 (D. Or. Sept. 18, 2013); *Collins v. City of New York*, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013). *See also Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.*, 805 F.2d 907, 918 (10th Cir. 1986) (In products liability case, Tenth Circuit determined that "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports.").

Deputy Williamson's brazen and felonious sexual assault of an inmate at the Jail is additional evidence of the lawless atmosphere that Sheriff Anthony instilled and of the absence of leadership and supervision. It is no wonder that inmates at the Jail were not being adequately supervised and cared for when officers like Williamson -- and Anthony himself -- felt free to engage in disgraceful acts while on duty.  Evidence of Williamson's crimes should not be precluded.

### 3. Evidence of Pornographic Materials on Jail Computers is Relevant and Admissible

Chester Carter, one of the Jail officers who was charged with looking after Mr. Manos, admits that there was pornographic website search history -- under his login -- found on a Jail computer. *See* Carter Depo. (Dkt. #249-7).  Fundamental to Plaintiff's claims in this matter is evidence of a systemic and dismal failure to supervise inmates with serious medical needs, as well as a failure to train. Evidence of Jail officers' on-duty use of County computers to search and view pornographic materials is certainly relevant to the inadequate supervision inquiry.  When officers are watching pornography at a time they are supposed to be watching the inmates, inmate health and safety is being disregarded. Indeed, Officer Carter seemingly agrees with Plaintiff on this point:

> Q And would you agree with me that if someone is watching pornography, they're not doing their job?
> A I totally agree, yes, sir.

> *Q That that's putting inmates' lives at risk?*
> *A Yes.*

Carter Depo. (Dkt. #249-7) at 106:23 – 107:4 (emphasis added). Evidence that pornography was being viewed on Carter County computers during work hours is relevant and not unduly prejudicial to Defendant.

### 4. Plaintiff Has Filed a Motion for Sanctions Addressing the "Spoliation" Issue

As its third issue in the Motion *in Limine*, Defendant addresses the alleged spoliation of video surveillance evidence. *See* Dkt. #249 at 4-6. Plaintiff has separately filed a Motion for Sanctions concerning the spoliation issue. *See* Dkt. #248. And Defendant has filed a Response in Opposition to the Motion for Sanctions. *See* Dkt. #250. Plaintiff adopts and incorporates her Motion for Sanctions herein. The spoliation question should be addressed through the Motion for Sanctions, as opposed to Defendant's Motion *in Limine*. In any event, the want of video surveillance evidence, due to the destruction or loss of that video evidence, is a relevant topic of inquiry in this case. To the extent that Plaintiff challenges the purported eye-witness testimony of any witness in this matter, she should be permitted to do so through questions as to the whereabouts of the surveillance video. Defendant's "spoliation" *in limine* argument lacks merit.

### 5. Other Lawsuits May be Relevant and Evidence and Questioning Concerning Other Lawsuits Should Not be Precluded

Without offering any specificity, Defendant next avers that "[o]ther lawsuits arising out of the Jail or the Sheriff's Office are not relevant and are confusing, misleading, and unfairly prejudicial." Dkt. #249 at 6. As an initial matter, this argument is so overly broad and lacking in particulars that it cannot meet Defendant's burden of establishing a basis for the preclusion of evidence. *See, e.g., Walsh v. United States,* No. 07-CV-568-PJC, 2009 WL 3755553, at *2 (N.D. Okla. Mar. 31, 2009).

Nevertheless, Plaintiff does plan on offering evidence of other cases or instances of medical neglect at the Jail to meet her burden of establishing the existence of an unconstitutional practice, policy or custom and deliberate indifference. Such evidence is highly relevant, and, in fact, vital, in a case such as this. *See, e.g., Am. Jr. Proof of Facts 3rd, Policy Misconduct as Municipal Policy or Custom*, § 14 (December 2012) ("In fact, **proof of custom generally requires evidence of similar incidents** in order to establish that the practice was sufficiently widespread and longstanding."). *See also Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998) ("In most instances, notice can be

7

established by proving the existence of a pattern of tortious conduct."); *Vann v. City of New York*, 72 F.3d 1040, 1051 (2nd Cir. 1995); *Green v. Fulton*, 157 F.R.D. 136, 141 (D. Me. 1994; *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1211 (D.N.J. 1996); *Gentile v. County of Suffolk*, 129 F.R.D. 435, 447 (E.D.N.Y. 1990) *aff'd*, 926 F.2d 142 (2d Cir. 1991); *Langford v. City of Elkhart*, 1992 WL 404443 (N.D. Ind. Apr. 21, 1992). The Court should deny Defendant's Motion *in Limine* as it pertains to issue #5.

### 6. Evidence and Questioning Regarding Wayne Bowker's Death is Relevant and Admissible

Again, "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, ***but is highly probative*** with respect to that inquiry." *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir.1997) (emphasis added). In *Grandstaff v. City of Borger, Tex.,* the United States Court of Appeals for the Fifth Circuit stated:

> The disposition of the policymaker may be inferred from his conduct after the events of that night. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies. If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.

767 F.2d at 171. In *Bordanaro v. McLeod*, 871 F.2d 1151, 1166–67 (1st Cir.1989), the United States Court of Appeals for the First Circuit affirmed the district court's admission of "post-event evidence of the lack of proper internal investigation of the attack and the failure take strong disciplinary action against the officers involved." 871 F.2d at 1166–67. As the First Circuit explained: "Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Id.*

Here, there is evidence that another inmate, Wayne Bowker, died after being subjected to deliberate indifference to his serious medical needs while housed at the Carter County Jail. The parallels between the treatment of Mr. Manos and Mr. Bowker are striking. For instance, Plaintiff is aware of the following evidence concerning Bowker:

- On June 15, 2016, Mr. Bowker returned to the Jail. He was not placed in an observation cell, or even in a medical cell, but was instead placed in the B-Block with other prisoners. From that point on, Mr. Bowker's health deteriorated precipitously. His mobility sharply declined. Other inmates had to help him get up off his mat, clean up his cell, and put water in his breathing machine.

- On or about June 27, 2016, Mr. Bowker began defecating in his pants. He became immobile and almost completely ceased talking other than a few short phrases. He often stripped naked, laid on his cell floor for hours at a time, covered in his own feces, staring out into space in a catatonic state.

- After Mr. Bowker had lain naked in his own feces for a number of days, Jail guards moved him, temporarily, to H-Block, the only area of the Jail with an observation cell.

- Deputy Terry Miller noticed Mr. Bowker wearing a "suicide gown" in H-Block. Jailer Carrie Cargil advised Deputy Miller that Mr. Bowker had not been eating.

- On June 29, 2016, Nurse Miller, who had just returned from vacation, attempted to ask Mr. Bowker why he had been lying down in his own feces. Mr. Bowker, in a catatonic state, could not respond. The only words he could muster were, "I can't. I can't." Nurse Miller did not attempt to administer any medical treatment to Mr. Bowker, nor did she call for any outside medical evaluation from a physician or any other trained medical staff. Instead, unexplainably, Nurse Miller left Mr. Bowker in his rapidly declining state, laying helpless and covered in his own waste, in his cell.

- In her interview with the OSBI, Nurse Miller indicated that Mr. Bowker was moved to H-Block not out of concern for his health, but because other inmates complained that he continually defecated in his pants and smeared feces on himself. Nurse Miller also implied that Mr. Bowker was somehow faking his condition. She stated that Mr. Bowker behaved as if he were helpless and expected others to clean up after him.

- Sometime later on June 29, Nurse Miller returned to Mr. Bowker and attempted to communicate with him a second time. At this point, Mr. Bowker had been lying on the ground for so long that he had bruising on his shoulder. Mr. Bowker also had some sort of white substance around his mouth. Detention officers Terry Miller and Chester Carter dragged Mr. Bowker to the shower and turned the water on him. When the jailers ordered Mr. Bowker to wash himself, he repeatedly muttered, "I can't. I'm stuck. I'm scared." He was unable to form any other coherent words or phrases. Jailers did not ask why Mr. Bowker was scared. After the jailers retrieved Mr. Bowker from the shower, Nurse Miller brought him a toothbrush and instructed him to brush his teeth, but Mr. Bowker was unable to comply.

- After Mr. Bowker's shower, Nurse Miller called Judge Carson Brooks and notified him of Mr. Bowker's behavior. Judge Brooks reportedly pointed out that Mr. Bowker had made it through several hearings and seemed to be fine previously.

- According to the OSBI report, Nurse Miller apparently relied on the advice of Judge Brooks – who has no medical training and had not seen Mr. Bowker at the time. Instead of either seeking the urgent medical care that Mr. Bowker required or returning him to an observation cell in H-Block or a medical cell in A-Block, jail staff dragged Mr. Bowers back to an individual cell in B-Block and left him there, in deliberate indifference to his obvious emergent medical needs.

- On June 30, 2016, at 1:02 AM, Deputy Danny Renken conducted a site check of Mr. Bowker's cell. Mr. Bowker was sitting on the toilet staring into space. By this point, he was fully entrenched in a catatonic state. He did not speak to Deputy Renken. Deputy Renken did not report Mr. Bowker's condition to anyone, despite the fact that Mr. Bowker's health had steadily deteriorated over the preceding week.

- About an hour later, at 2:09 AM, Deputy Renken conducted another site check. This time, he found Mr. Bowker lying on the floor face down near the cell door. Mr. Bowker was limp and cold to the touch. He had no pulse and did not appear to be breathing. Instead of attempting to resuscitate Mr. Bowker, Deputy Renken radioed Sergeant McDaniels. Sergeant McDaniels rolled Mr. Bowker over, revealing that Mr. Bowker had vomited and possibly aspirated. … Paramedics transported Mr. Bowker to Mercy Memorial Hospital, where he was pronounced dead at 2:55 AM by Dr. Sang Lee.

- A jailer told paramedic Joshua Morgan that Mr. Bowker had been sick for about a week and was supposed to be on close observation. Despite the knowledge of Mr. Bowker's serious conditions, no one at the jail ever recommended that Mr. Bowker see a physician. He was not given any treatment in the days leading up to his death.

The unconscionable mistreatment of Mr. Bowker is strong evidence that the unconstitutional conditions persisted at the Jail even after Mr. Manos' tragic death. Bowker's plight evinces a continuing failure to train and supervise Jail staff with respect to basic medical care of inmates, especially inmates with serious and complex medical needs. In fact, Bowker's experience at the Jail reiterates that the Carter County Sheriff had failed to install **any** discernable health care delivery system at all. The evidence regarding Mr. Bowker is relevant post-event evidence as it sheds "light on what policies existed in [at the Jail] on the date of an alleged deprivation of [Mr. Manos'] constitutional right[s]."*Bordanaro*, 871 F.2d at 1166–67.

### 7. It is *Not* Improper in a § 1983 Setting to Reasonably Ask the Jury to Make a Decision, in Part, to Deter Future Constitutional Misconduct

In Issue #7, Defendant asks this Court to issue an order barring counsel from making any argument to the jury that it should "send a message" by issuing a sufficient verdict to deter future violations of the Constitution. *See* Dkt. #249 at 12-13. Such an argument is not improper in a § 1983 case. *See, e.g., Ramirez v. N.Y. City Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997). While it is true that courts have found such arguments to be improper in the tort setting, Defendant has cited no such authority concerning a § 1983 action. Fortunately, the precise issue was addressed by the Ninth Circuit in *Chalmers v. City of Los Angeles,* 762 F.2d 753, 761 (9th Cir. 1985). In particular, the *Chalmers* Court stated:

10

> [T]he City claims that in discussing the deterrent effects of damages under section 1983, plaintiff's counsel was effectively requesting an award of punitive damages. … ***Deterrence, however, is an acknowledged goal of that section, id., and an argument which emphasizes deterrence is not necessarily equivalent to an argument for punitive damages.*** …The City has not established an abuse of discretion by the trial court in denying a new trial motion on the ground of attorney misconduct.

(emphasis added). The primary objectives of § 1983 are "compensation of persons injured by deprivation of federal rights and ***prevention of abuses of power*** by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978) (emphasis added). *See also Restivo v. Hessemann*, 846 F.3d 547, 585-86 (2nd Cir. 2017); *Dobson v. Camden*, 705 F.2d 759, 765 (5th Cir. 1983). Thus, it is appropriate for counsel to call upon the jury to "send a message" by issuing an award of compensatory damages sufficient to deter future violations of the Constitution. And there should be no order *in limine* prohibiting counsel from making such an argument.

### 8. Evidence, Questioning and Argument Concerning the Water Line to Mr. Manos' Cell Should *Not* be Precluded

Defendant concedes that Mr. Manos' cell had been flooded with water from his toilet. The Medical Examiner later reported, based on information from an OSBI investigator, that while inmates typically have access to drinking water by way of a faucet in the cells, the ***Jail may have turned off the water*** to Mr. Manos' cell to prevent further flooding. *See* ME Supp. Report (Dkt. #208-23) at OCME030. Further, while the minimum Jails Standards require that Manos' cell have a washbasin with hot and cold running water, photographs taken of Manos' cell shortly after his death show that there is only one (1) sink faucet, which appears to be inoperable as it has been ripped out of the wall. *See* Cell Photos (Dkt. #208-26). These same photographs are evidence of the fact that Manos was not provided with a drinking cup, or had it taken from him, as there is not a cup anywhere in his cell. *Id*. Pertinently, after Mr. Manos' death, the Medical Examiner found "vitreous chemistries consistent with ***dehydration."*** ME Report (Dkt. #208-15) at 2 (emphasis added). Based on the post-mortem lab data, Plaintiff's expert, Todd Wilcox, M.D., determined that Mr. Manos was "***massively dehydrated,*** which causes the blood to thicken, which then makes him more prone to develop a thrombus, more prone to have a pulmonary embolism." Wilcox Depo. (Dkt. #208-13) at 94:20 – 96:7 (emphasis added).

It is axiomatic that Manos' access to water, while housed at the Jail, is a matter of central importance in this case. Nonetheless, Defendant argues that "Plaintiff should be ordered to make

11

no argument, statement, insinuation, ask a question, etc., which tends to suggest that the Jail turned the water off in the Decedent's cell" and that "[t]his is hearsay, hearsay within hearsay, confusing, and unfairly prejudicial." Dkt. #249 at 13. However, Plaintiff plans on calling Justin Brown, the OSBI investigator who made the finding concerning Manos' access to water, to testify at trial. This will alleviate any hearsay concerns. Plus, the supplemental ME Report is itself admissible under the "Public Records" exception to the hearsay rule. *See* Fed. R. Evid. 803(8)(A)(iii); *United States v. The Boeing Co.*, 825 F.3d 1138, 1146 (10th Cir. 2016) (admitting public record over hearsay within hearsay argument reasoning that Rule 803(8) "necessarily covers findings ... based in part on matters outside the personal knowledge of the preparers of those reports.") (internal quotations omitted). Lastly, Defendant's assertion that admission of this evidence would be "confusing" and "unfairly prejudicial" is insubstantial, particularly considering the significant probative value.

### 9. Hypothetical Questions are *NOT* Improper and Should *NOT* be Excluded.

Defendant asks the Court to prohibit Plaintiff's counsel from posing hypothetical fact scenarios and questions of witnesses. Dkt. #249 at 13. But certain hypothetical questions are permissible to both expert and lay witnesses. With respect to the former, "[h]ypothetical questions directed to expert witnesses are proper if the facts assumed in those questions are based upon evidence 'tending to establish them.'" *Ramsey v. Pepsi Cola Bottling Co.*, 2007 WL 97107783 at *3, (M.D. Louisiana 2007) (quoting 32 C.J.S. Evidence § 696).

Additionally, under Rule 701, lay witnesses may testify in the form of an opinion as long as that opinion is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Further, "[a] lay witness with first hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 577 F.3d 1190, 1201-02 (3rd Cir. 1995). Plaintiff's counsel should be permitted to pose hypothetical questions in accord with the Federal Rules of Evidence.

### 10. Evidence of the Sheriff's Office's Investigation / Internal Review (or Lack Thereof) After Mr. Manos' Death is Relevant and Admissible

As the Tenth Circuit has held, "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports."

12

*Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron, a Div. of Textron, Inc.,* 805 F.2d 907, 918 (10th Cir. 1986). Furthermore, as emphasized above, "post-event evidence of the lack of proper internal investigation" is relevant in cases where the plaintiff must prove the existence of a governmental policy or custom. *Bordanaro v. McLeod*, 871 F.2d 1151, 1166–67 (1st Cir.1989). This is a relevant topic in this case, and such evidence is not unduly prejudicial.

## 11. Counsel For Plaintiff May Properly Inquire About the Truthfulness of a Witness

Under Rule 608(a) of the Federal Rules of Evidence:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Both parties should be permitted to question witnesses concerning any "reputation for having a character for truthfulness or untruthfulness, or … opinion about that character" in compliance with Rule 608(a). Defendant has provided this Court with no valid basis to deviate from the Rule.

## 12. Plaintiff's Counsel May Make Popular Culture References in Closing Argument

As the Tenth Circuit has acknowledged, closing "[a]rguments may be forceful, colorful, or dramatic, ***without*** constituting reversible error." *Whittenburg v. Werner Enters. Inc.,* 561 F.3d 1122, 1133 (10th Cir. 2009) (emphasis added). Indeed, "[c]ounsel may [properly] 'resort to poetry, cite history, ***fiction***, personal experiences, anecdotes, biblical stories, or tell jokes.'" *Id.* (quoting Jacob Stein, Closing Arguments, § 1:14 (2d ed. 2005)) (emphasis added). Counsel for Plaintiff does not yet know what his closing argument will consist of; but, the Court should not preclude counsel from making permissible references, including appropriate references to works of fiction.

## 13. The Bowker OSBI Report is Admissible Under the Public Records Exception to the Hearsay Rule

The relevance of Wayne Bowker's experience at the Jail, and subsequent death, is discussed in Response # 6, *supra.* Defendant also argues that the Report generated by OSBI in connection with its investigation of Bowker's death is inadmissible hearsay and hearsay within hearsay. *See* Dkt. #249 at 15. On the contrary, the OSBI Report is an admissible public record. Government reports, "with their opinions, conclusions, and recommendations, [are] presumed admissible under

rule 803(8)(C), unless [the opposing party] demonstrates the reports' untrustworthiness." *Hernandez v. City of Albuquerque*, No. CV 02-0333 JB/RHS, 2004 WL 7338279, at *3 (D.N.M. Jan. 24, 2004) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167-69 (1988) (holding that conclusions and opinions in government reports are generally admissible)). *See also Owens v. Republic of Sudan*, 864 F.3d 751, 792 (D.C. Cir. 2017), *certified question answered*, 194 A.3d 38 (D.C. 2018) ("Once proffered, a public record is presumptively admissible, and the opponent bears the burden of showing it is unreliable.") (citing *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000)).

Defendant has failed to rebut the presumption that the OSBI Report is trustworthy, and thus, admissible. Additionally, Defendant's "hearsay within hearsay" argument is insufficient to preclude the OSBI Report from admission into evidence. *See, e.g., United States v. The Boeing Co.*, 825 F.3d 1138, 1146 (10th Cir. 2016).

### 14. Mr. Manos' VA Records Are Relevant and Admissible

Defendant argues that statements attributed to Plaintiff in certain of Mr. Manos' Veteran's Administration ("VA") medical records are inadmissible hearsay and hearsay within hearsay. *See* Dkt. # 249 at 15. Rule 803(4), however, makes admissible "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Accordingly, statements contained in the medical records made for the purpose of medical diagnosis or treatment are admissible under Rule 803(4). Further, Plaintiff will be available to testify live at trial to verify the statements summarized in the VA Records. Accordingly, the VA Records should not be precluded from evidence on hearsay grounds.[2]

WHEREFORE, premises considered, Plaintiff respectfully requests that the Court deny Defendant's Motion *in Limine* (Dkt. #249).

Respectfully submitted,

/s/Robert M. Blakemore
Daniel Smolen
danielsmolen@ssrok.com
Robert M. Blakemore
bobblakemore@ssrok.com
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119

---

[2] Plaintiff does not oppose Defendant's Issue #15.

14

Phone: (918) 585-2667
Fax: (918) 585-2669

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants who have appeared in this case.

/s/ Robert M. Blakemore